has no independent significance because the words "accessories" and "parts" are not considered in the trade necessarily to mean different things; rather, the record makes clear that they are terms which are used interchangeably in the industry.

In summary, we hold that the wigs in question are "parts" of dolls. In view of that circumstance, and since the wigs are concededly described as such in item 790.70,[9] General Interpretative Rule 10(ij) and the headnotes to subpart E require that the specific provision for wigs under item 790.70 prevail. The protest is sustained, and judgment will be entered accordingly.

(C.D. 3532)

DORF INTERNATIONAL, INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided August 8, 1968)

*Waters & Morris* (*Frederick W. Hess* of counsel) for the plaintiff.

*Edwin L. Weisl, Jr.,* Assistant Attorney General (*Bernard J. Babb* and *Irving A. Mandel,* trial attorneys), for the defendant.

---

[9] Item 790.70, as previously set out, covers "Wigs, toupees, chignons, and similar articles. This is an unrestricted and unqualified *eo nomine* provision for "wigs," among other things, and is governed by the long-established principle that an *eo nomine* designation, without limitation, includes all forms of the article. *E.g., United States* v. *Williams Clarke Co., etc.,* 50 CCPA 67, 70, C.A.D. 822 (1963); *C. J. Tower & Sons* v. *United States,* 47 CCPA 85,87, C.A.D. 734 (1960) ; *United States* v. *Page N. Gaffigon,* 43 CCPA 172, 175, C.A.D. 625 (1956).

Before RAO and FORD, Judges

RAO, Chief Judge: This protest presents for the court's determination the question of the proper classification for customs duty purposes of certain imported merchandise, invoiced as casters. This merchandise was classified by the customs officials as articles or wares not specially provided for, in chief value of iron or steel, within the provisions of paragraph 397 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, and, accordingly, assessed with duty at the rate of 19 per centum ad valorem.

It is the claim of the plaintiff that these articles are more specifically provided for in paragraph 372 of said act, as so modified, as machines, finished or unfinished, not specially provided for, or parts thereof, not specially provided for, which are dutiable at the rate of 11½ per centum ad valorem, or under paragraph 1537(b) of said act, as so modified, as manufactures of rubber, and dutiable at the rate of 12 per centum ad valorem. This latter claim was, however, abandoned during the course of trial.

The pertinent parts of the provisions here involved read as follows:

Paragraph 397 of the Tariff Act of 1930, as modified by T.D. 54108—

Articles or wares not specially provided for, whether partly or wholly manufactured:

*        *        *        *        *        *        *

    Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer:

        *        *        *        *        *        *        *

        Not wholly or in chief value of tin or tin plate:

            Carriages, drays, * * *

            *        *        *        *        *        *        *

            Other, composed wholly or in chief value of iron, steel, brass, bronze, zinc, or aluminum (except * * *)__ 19% ad val.

Paragraph 372 of the Tariff Act of 1930, as modified, *supra*—

Machines, finished or unfinished, not specially provided for:

    Adding machines_____ * * *

       *        *        *        *        *        *        *

    Other * * *_____ 11½% ad val.

Parts, not specially provided for, wholly or in chief value of metal or porcelain, of any article provided for in any item 372 in this Part_____ The rate for the article of which they are parts.

The only witness was Mr. Harry Adreme, managing partner of Atlas Equipment Company, the ultimate consignee of the merchandise, who was called to testify on behalf of the plaintiff. He explained that he had been in the business of material handling equipment for over 25 years. His company, he stated, distributed material handling equipment to accounts throughout the continental United States.

A representative sample of the merchandise in issue was identified by the witness, offered, and received in evidence as exhibit 1. This sample of the merchandise is a metal swivel caster, the wheel of which measures approximately 5 inches in diameter and is covered by a hard rubber tire. A steel yoke houses the wheel which turns on a steel shaft passing through its center. Ball bearings separate the metal base plate and the steel yoke permitting the wheel in its housing to rotate independently of the metal base plate and allowing movement in any direction. The subject casters are also imported in sizes of 6- and 8-inch diameter wheels. Apart from size, the imported casters differ only as to the wheel axle fittings. The 5-inch size caster has a sleeve bearing axle while the 6- and 8-inch sizes have bearings at the wheel hub with grease fittings.

The witness stated that the casters in controversy are used industrially for material handling equipment such as four-wheel trucks, skids or dollies, which facilitate the movement of materials.

Certain pages of a catalogue published and distributed by the witness' company were identified and received in evidence as plaintiff's exhibits 2–A and 2–B. The witness indentified a portion of page 7 of his company's catalogue (exhibit 2–A) which advertises the three sizes of casters at bar. The middle of page 4 in the same catalogue, identified by the witness (exhibit 2–B), illustrates casters of the kind in issue incorporated on a warehouse truck. The latter catalogue illustration emphasizes the witness' concluding opinion that the casters in controversy have no value unless they are attached to a piece of material handling equipment.

The first of plaintiff's claims is that the casters in issue are machines within the common meaning of that term and should be classified as such within the provisions of paragraph 372 of the Tariff Act of 1930, as modified, *supra*. As stated in the case of *United States* v. *John B. Stetson Co.*, 21 CCPA 3, T.D. 46319:

\* \* \* The common meaning to be attached to a term or word used by the Congress in a provision of a tariff act is a matter to be determined by the court having the same under consideration. In making this determination the court may rely upon its own understanding of the word or term used, and it may assist its own understanding by reference to the works of standard lexicographers, scientific authorities, the testimony of witnesses, or by such other means as may be available. If testimony be offered upon the common meaning of a statutory word or term such testimony is advisory only and has no binding effect on the court. [Citing cases.]

Consideration was given to the common meaning to be ascribed to the term "machine" in the case of *United States* v. *IDL Mfg. & Sales Corp.*, 48 CCPA 17, C.A.D. 756. The appellate court had before it for determination certain hand-operated paper punches which had been classified by the collector of customs as manufactures of metal, not specially provided for, under paragraph 397 of the Tariff Act of 1930, as modified. Claim was made by the importer that the articles were machines, not specially provided for, under paragraph 372 of the Tariff Act of 1930, as modified. The appellate court, in sustaining the plaintiff's claim, stated that there are many items which have and have not been held to be machines for tariff purposes. However, the court stated that there is no judicial determination of what a machine is. It remains a matter of common meaning, with each case being determined on its own technical facts and related legislative history. The court quoted the following definition of "machine" from Webster's New International Dictionary:

Any device consisting of two or more resistant, relatively constrained parts, which, by a certain predetermined intermotion, may serve to transmit and modify force and motion so as to produce some given effect or to do some desired kind of work; \* \* \*.

And in a footnote to said *IDL* case, the court referred to a discussion of over a column in length appearing in the Columbia Encyclopedia, 2d edition, quoting therefrom as follows:

A machine is, on this basis, any device, simple or complex, by which the intensity of an applied force is increased, its direction changed, or one form of motion or energy changed into another form. Therefore, such simple contrivances as the LEVER, the PULLEY, the INCLINE PLANE, the SCREW, and the WHEEL AND AXLE are machines. These are classed as simple machines, the five being grouped together by engineers as the mechanical powers or the fundamentally simple machines, of which all the more complicated machines are merely combinations.

In light of the foregoing authorities, we are of the opinion that in

a broad sense a caster of the kind at bar may be said to be a mechanical device. However, it is also apparent that said caster is not such a mechanical device that would be included in the common meaning of the term "machine" in the tariff sense. The caster falls into the category of a machine only in the engineering sense of a fundamentally simple device which may at times be or become an element of a machine.

The function of the item here in controversy is comparable to that of the children's tricycles which were before the court in the case of *United States* v. *Associated Mfg. Co.*, 30 CCPA 236, C.A.D. 238. Said tricycles were classified as articles or wares of metal, not specially provided for, under paragraph 397 of the Tariff Act of 1930 and claimed by the importer to be machines, not specially provided for, under paragraph 372 of the Tariff Act of 1930. There the court stated:

Of course the tricycles herein are mechanical contrivances. We do not think, however, it can be said that such mechanical contrivances utilize energy or force. They are merely moved, carrying their riders by means of the force exercised on the pedals which turn the front wheel one revolution to every revolution made by the pedals. Energy or force is applied to the tricycle, but is not utilized by it. A tricycle, in our opinion, is no more a machine than the hoisting apparatus of the old oaken bucket wherein the rope to which the bucket was appended was wound around a drum axle by the rotation of the angle-iron handle.

It is clear that a tricycle does not apply force or energy; the force or energy used in its propulsion is applied to it. Neither does it modify force or energy for the reason that the foot power necessary to turn the front wheel is not changed or modified in any respect by the apparatus. A tricycle such as here involved is not a mechanical contrivance for the transmission of motion.

By analogy to the tricycles in the *Associated* case, *supra*, the casters at bar when affixed to material handling equipment merely carry their cargo by means of the force exerted on the device itself. For each application of force made upon the equipment, the equipment moves to the same degree. There is no utilization of energy or force applied by the equipment, but merely the application thereof. The energy is transferred, but it is in no way accelerated, altered, or intensified. The reaction to the force applied to the particular piece of equipment with a caster attached is only the same action which naturally flows from the energy exerted thereon.

In light of the foregoing considerations we are clearly of the opinion that the casters at bar in and of themselves are not machines in a tariff sense.

Plaintiff's second claim is that the articles in controversy are parts of machines because they are integral parts of material handling equipment. It has been held by the Court of Customs and Patent Appeals that the yardstick of whether or not an article is a part of a machine is whether or not it has been advanced to a point which definitely commits it to that specific class and kind of manufacture. See *United States* v. *Ford Motor Company*, 51 CCPA 22, C.A.D. 831, wherein the appellate court quoted with approval from the trial court's opinion as follows:

An article not an article constituent of a manufacture can not be considered as part thereof unless it has been advanced to a point which definitely commits it to that specific class and kind of manufacture. An article commercially suitable and commercially used for the making of different things is a material which is just as much adapted to the production of all of them as it is to the production of any one of them and until it has been finally appropriated to some definite manufacturing use and has been given the distinguishing characteristics which clearly identify it as one of the components ultimately to be assembled into a particular completed whole, it can not be regarded as a part of any specified manufacture.

See also *United States* v. *American Bead Co. et al.*, 9 Ct. Cust. Appls. 27, T.D. 37873, and *Ronco Corporation* v. *United States*, 44 Cust. Ct. 253, C. D. 2184.

In this instance, the fact that the casters at bar are of no value alone and must be incorporated into material handling equipment is not such a commitment to a specific class or a final appropriation as to distinguish it or identify it as a part of a specific machine or type or group of machines. On the contrary, the casters at issue are used on skids, dollies, and other material handling equipment which may or may not be machines.

Upon due consideration of the record presented herein and a review of the authorities cited, this court is of the opinion that the plaintiff has failed to support the claim in the protest that the subject casters were machines or parts thereof under the provisions of paragraph 372 of the Tariff Act of 1930, as modified by the sixth protocol, *supra*, and said claim is, therefore, overruled. The plaintiff's additional claim, under paragraph 1537 (b) of said Tariff Act of 1930, as modified, *supra*, for classification of the merchandise as manufactures of rubber, and dutiable at the rate of 12 per centum ad valorem, having been abandoned at the trial by the plaintiff, is hereby dismissed.

Judgment will be entered accordingly.