**WILFRED SCHADE & CO., Inc. a/c Glamorgan Pipe & Foundry Co.**

**v.**

**UNITED STATES.**

**C.D. 3701; Protest Nos. 66/50099–2505, 66/50100–2506.**

United States Customs Court,
Second Division.

Feb. 12, 1969.

Before RAO, Chief Judge, and FORD, Judge.

FORD, Judge:

The cases listed above, consolidated for the purpose of trial, involve the proper classification of certain molds designed for and dedicated for use with a de Lavaud casting machine. The molds were classified under item 680.15, Tariff Schedules of the United States, as molds of types used for metal and assessed with duty at the rate of 11.5 per centum ad valorem.[1]

Plaintiff herein contends said molds are parts of casting machines and as such dutiable at 9 per centum ad valorem under the provisions of item 674.10, Tariff Schedules of the United States.[2]

The record herein consists of the testimony of two well-qualified witnesses, Mr. William Howard Cosby and Mr. C. Gilmer Loving, as well as 10 exhibits received on behalf of plaintiff. The record as made establishes to our satisfaction that the molds involved herein were made to the specifications of the actual importer herein for use on its de Lavaud casting machine. The machine without such molds would not be able to operate. The de Lavaud machine itself was made to the specifications of the importer and is different from other de Lavaud machines. The molds would not fit any other casting machine. Based upon the record as made, defendant, in its brief, makes the following concession with which we agree:

The Government concedes, upon the basis of the instant record, that the plaintiff has shown that the involved molds are factually, parts of de Lavaud casting machines, dedicated for use in and an essential, integral part of said machines; * * *.

Counihan, Casey & Loomis, Washington, D. C. (E. Riley Casey and Stephen F. Owen, Jr., Washington, D. C., of counsel), for plaintiff.

William D. Ruckelshaus, Asst. Atty. Gen. (Harold L. Grossman, New York City, trial atty.), for defendant.

1. Item 680.15
  Molds of types used for metal (except ingot molds), * * *:
    *      *      *      *      *
  Other ................11.5% ad val.

2. Item 674.10
  Converters, ingot molds, and casting machines, all the foregoing of types used in metallurgy and in metal foundries, and parts thereof ....9% ad val.

Defendant contends that in light of General Headnote 10(ij),[3] the *eo nomine* provision for molds in item 680.15, *supra*, prevails over the provision for parts contained in item 674.10, *supra*. While it is abundantly clear that the imported molds fall within the first portion of General Headnote 10(ij), it is equally clear from the explicit language utilized in the latter portion of said headnote that a part does not prevail over a specific provision for such part. The provision for molds contained in item 680.15 is most specific and hence classification as parts may not be made. J. E. Bernard & Co., Inc. v. United States, 59 Cust.Ct. 31, C.D. 3060; C. F. Liebert v. United States, 60 Cust.Ct. 677, C.D. 3499; Foster Wheeler Corp. v. United States, 61 Cust.Ct ——., C.D. 3556.

Plaintiff's position with respect to General Headnote 10(ij) is that the headnote did not intend to include custom made parts. In support of its position, the explanatory material contained in the Classification Study, Submitting Report, November 15, 1960, is quoted:

General Headnote 10(ij) specifies that a provision for parts of an article covers a product solely or chiefly used as a part of such article but does not prevail over a specific provision for such part. At the present time, much uncertainty exists in connection with the tariff treatment of parts of articles. In some instances, a mere provision for "parts" prevails over much more specific descriptions in the Tariff Schedules. Even certain "universal" components such as nuts, bolts, screws, etc. are sometimes classified as parts of a particular article according to their type and specific uses. In the proposed schedules, specific provision is made for the more usual components of articles. Under the rule expressed in headnote 10(ij) these specific provisions will prevail over a mere provision for "parts" of a particular article.

■ With their position we cannot agree. In general, the intention may have been to include only such articles which had universal or interchangeable use. However, the language used is clear and implicit and an interpretation, as contended by plaintiff, would be strained. Unfortunately, in view of the language, even parts which are designed, dedicated and solely used and have no other use as was the law judicially determined prior to the enactment of the Tariff Schedules of the United States,[4] would nevertheless be classified as other than parts where a specific enumeration is contained elsewhere in the Tariff Schedules of the United States.

■ Even though it is conceded and established that the imported merchandise is described in both the classified and claimed provisions, we are of the opinion that the imported molds are subject to classification as classified. General Headnote 10(c) contains the following language for guidance in cases involving relative specificity:

an imported article which is described in two or more provisions of the schedules is classifiable in the provision which most specifically describes it; * * *

■ The more specific provision is the one having requirements which are more difficult to satisfy and provides for the article with the greatest degree of accuracy. United States, etc. v. Simon Saw & Steel Co., 51 CCPA 33, C.A.D. 834. In the *Simon* case, *supra*, the court was considering the specificity of the provision for circular saws as against cutting tools as provided for in paragraphs 340 and 352 of the Tariff Act of

---

3. General Headnote 10(ij)

    a provision for "parts" of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part.

4. Gallagher & Ascher Company v. United States, 52 CCPA 11, C.A.D. 849; Trans Atlantic Company v. United States, 48 CCPA 30, C.A.D. 758; United States v. Antonio Pompeo, 43 CCPA 9, C.A.D. 602.

1930. The court therein made the following observation:

> Paragraph 340 provides for circular saws as such. To meet the requirements of this term, the article must be circular in shape and have a continuous series of teeth on its periphery, and be capable of performing a sawing function. On the other hand, paragraph 352 provides for cutting tools of any description or any kind, and in fact lists six different kinds of cutting tools in its first provision. Numerous additional kinds of cutting tools are named in the companion provision, paragraph 396. The common (dictionary) meaning of the named cutting tools includes a great many different types. .

> In paragraph 340 only one article is capable of qualifying as a circular saw: it must be an article circular in shape, with teeth on the periphery. In the second provision of paragraph 352, selected by the lower court as the applicable clause, it would be possible to include many different articles, since the definitive criterion is the ability to cut. Even though all circular saws may be cutting tools, it is clear that all cutting tools are not circular saws. For example, although all drills, reamers, and taps are cutting tools, certainly none are circular saws.

> Sawing is a specific form of cutting and a saw is a specific tool designed to carry out that form of cutting operation. This being the case, we think the *eo nomine* provisions of paragraph 340 are clear and unambiguous. Such a specific designation should prevail over the more general and far less specific designation of the class of cutting tools in paragraph 352. We believe this conclusion is inescapable from an examination of the statutes involved in this case. ‘ * * *

In the case at bar, it is equally clear that there are many parts of casting machines which are not molds. The specific provision for molds of types used for metal under which classification was made must prevail over the more general and less specific designation of parts of casting machines.

■ The next question raised by plaintiff herein is that the rate of duty was increased by virtue of the Tariff Schedules of the United States which is contrary to the legislative intent as expressed in Public Law 768, 68 Stat. 1136. There is some evidence of an increase in the rate of duty under the Tariff Schedules of the United States. However, this question of law was thoroughly considered in the case of F. L. Smidth & Company v. United States, 59 Cust.Ct. 276, C.D. 3141 (appeal pending), and found to have been approved by Congress and hence valid. In the *Smidth* case, *supra*, we made the following observation:

> The Tariff Commission's failure to comply with the mandate of Congress in delegating the authority, to revise the tariff act is tantamount to an *ultra vires* act on its part. However, subsequently Congress did adopt and ratify the proposed tariff schedules, Public Law 87–456, 76 Stat. 72. Therefore, while the action of the Tariff Commission was in its inception *ultra vires*, the subsequent adoption and ratification by Congress validated the tariff schedules. * * *

In view of all of the foregoing, the protest is overruled.

Judgment will be entered accordingly.