(C.D. 3856)

A. N. Deringer, Inc. *v.* United States

United States Customs Court, Second Division

(Decided June 25, 1969)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* and *Peter J. Fitch* of counsel) for the plaintiff.

*William D. Ruckelshaus*, Assistant Attorney General (*Steven R. Sosnov*, trial attorney), for the defendant.

### Before RAO and FORD, Judges

FORD, Judge: The two protests herein which have been consolidated for purposes of trial place in issue the classification of certain importations as pulleys pursuant to item 680.50, Tariff Schedules of the United States, and the assessment of duty thereon at the rate of 17 per centum ad valorem. Plaintiff claims that the merchandise is properly classifiable pursuant to item 664.10 either as pulley tackle, other lifting or handling machinery or parts thereof, dutiable at the rate of 10.5 per centum ad valorem or pursuant to item 678.50 as machines not specially provided for, dutiable at the rate of 10 per centum ad valorem.

The relevant statutory provisions read as follows:

Item 680.50, *supra:*

> Pulleys, pillow blocks, shaft couplings, and parts thereof_____ 17% ad val.

Item 664.10, *supra:*

> Elevators, hoists, winches, cranes, jacks, pulley tackle, belt conveyors, and other lifting, handling, loading, or unloading machinery, and conveyors, all the foregoing and parts thereof not provided for in item 664.05_____ 10.5% ad val.

Item 678.50, *supra:*

> Machines, not specially provided for, and
> parts thereof_____ 10% ad val.

Mr. Gustave Dahan, a mechanical engineer and vice president of the manufacturer, testified for the plaintiff and stated that his firm was engaged in the manufacture of special equipment used in the stringing of high voltage transmission lines. He testified that the articles in question, consisting of an assembly of two or three sheaves (wheels with grooved edges) mounted on an axle, and enclosed in a frame to which chains are attached, were known in the trade as "travelers" and were used to support high voltage conductor wires as they are strung and attached to the line of transmission towers. It appears the articles in question are raised up and attached to towers and electrical conductors, cablelike in appearance, are guided over the grooved wheels and then lifted from them for appropriate attachment to the tower. The articles in question are then lowered for use on other towers. The witness further stated that the articles in question weigh up to 500 pounds each.

Photographs were introduced in evidence as plaintiff's illustrative exhibits 1, 3, 4, and 5, depicting articles similar to those in question at rest and in use. Plaintiff's illustrative exhibit 2 was a photograph of a "tensioner", a device used to provide sufficient tension on the cables being handled to keep them from touching the ground as they are unreeled.

The witness was of the opinion that the units in question were best described as blocks or "sheave blocks" and not as pulleys which he evidently considered to be limited to sheaves or wheels with grooved edges. The witness further stated that the importation could be described as pulley tackle because it was a combination of ropes and pulleys for the purpose of hoisting and pulling heavy objects. The witness also stated that the importation could be considered a mechanical device in that it transmitted motion and gave mechanical advantage, in the sense that it improved the function of the operation it was involved in.

The defendant introduced in evidence as exhibit A a letter from the witness to the customs examiner at the port of entry advocating classification of the importation under the provision for pulley tackle and mentioning *inter alia* that the item in question is an "idler" which does not transmit power.

This case is best discussed in a frame of reference of plaintiff's burden of proof which requires that it disprove the classification of the collector and prove the classification it espouses. In connection with the first part of its burden, plaintiff has attempted to prove that the instant importations are not within the scope of pulleys set forth in item 680.50. The testimony of plaintiff's witness and most of the

available authority supports the view that the importations are most precisely known as sheave blocks or pulley blocks. Plaintiff next brings to our attention the fact that language specifically naming pulley blocks was removed from item 680.50 in a version of that provision by the Tariff Commission set forth in its first supplemental report. From these facts, plaintiff asks us to infer first, that a pulley block is an article distinct and separate from a pulley and second, that the word "pulley" as used in item 680.50 was not intended to cover pulley blocks.

After extensive study of this matter, we are unwilling to make these inferences and are inclined to a view which treats pulley blocks as pulleys and reads no exclusionary intention into the deletion of specific language by the Tariff Commission. A number of potent considerations lead us to this view. The modern dictionaries do not support the narrow definition of pulley proposed by plaintiff.

Webster's Third New International Dictionary of the English Language (1968):

> pulley * * * 1 a: a small wheel with a grooved rim: SHEAVE b: a sheave with the pin on which it turns, the frame in which it runs, and the flexible rope, cord, or chain passing through the groove that is used singly to change the direction and point of application of a pulling force applied at one end of the rope, cord, or chain and singly or in any of various definite combinations to increase the applied force esp. for lifting weights—see TACKLE 2 a: a single pulley or a combination of pulleys with the necessary ropes to form a tackle regarded as one of the simple machines or mechanical powers * * *

The Random House Dictionary of the English Language (1966):

> pulley * * * 1. a wheel, with a grooved rim for carrying a line, that turns in a frame or block and serves to change the direction of or to transmit force, as when one end of the line is pulled to raise a weight at the other end. 2. a combination of such wheels in a block, or of such wheels or blocks in a tackle, to increase the force applied. * * *

The Oxford English Dictionary (1961):

> pulley, B.1. One of the simple mechanical powers, consisting of a grooved wheel mounted in a block, so that a cord or the like may pass over it; used for changing the direction of power, esp. for raising weights by pulling downward. Also, a combination of such wheels in a BLOCK, or a system of blocks in a TACKLE, by means of which the power is increased.

It is clear that in the absence of a clear showing of legislative intent to the contrary the word "pulley" as used in item 680.50 will encompass an article more precisely known as a pulley block. As noted, plaintiff advances the contention that the deletion of specific mention of

pulley blocks from an early draft of item 680.50 is evidence of an intention to remove those articles from the scope of that provision. In the Tariff Classification Study, Schedule 6, part 4, published in 1960, the United States Tariff Commission noted that item 680.55 was a new provision for "pulleys, pulley blocks, shaft couplings, and lubrication fittings. * * *" In its First Supplemental Report at page 170, a revision was made as follows:

REFERENCE No. 51—Vol. 2, p. 506; Vol. 8, p. 256:

Delete items 680.45, 680.50, and 680.55, and insert the following in numerical order:

| Item | Articles | Rates of Duty 1 | 2 |
|---|---|---|---|
| | Gear boxes and other speed changers with fixed, multiple, or variable ratios; pulleys, pillow blocks, and shaft couplings; torque converters; chain sprockets; clutches; and universal joints; all the foregoing and parts thereof (except parts of motor vehicles, aircraft, and bicycles): | | |
| |   Gear boxes and other speed changers, and parts thereof: | | |

| Item | Articles | Rates of Duty 1 | 2 |
|---|---|---|---|
| 680. 45 |     Fixed ratio speed changers, and parts thereof__ | 11.5% ad val. | 27.5% ad val. |
| 680. 47 |     Other speed changers_____ | $2.25 each + 35% ad val. | $4.50 each + 65% ad val. |
| 680. 48 |       Other parts_____ | 45% ad val. | 65% ad val. |
| 680. 50 |   *Pulleys, pillow blocks, shaft couplings, and parts thereof* [emphasis supplied]_____ | 19% ad val. | 45% ad val. |
| 680. 52 |   Torque converters, and parts thereof__ | 11.5% ad val. | 27.5% ad val. |
| 680. 54 |   Chain sprockets, clutches, universal joints, and parts thereof_____ | 19% ad val. | 45% ad val. |
| 680. 57 | Lubrication fittings_____ | 19% ad val. | 45% ad val. |

Explanation: The changes are for purposes of clarification of certain terms, and also to include several additional well-known articles of mechnical power transmission equipment (torque converters, sprockets, clutches, and universal joints), and parts of articles. The rates reflected for each of the various items are the existing rates imposed on the products covered thereby.

We note the commission expresses the purposes of its revisions as being the clarification of certain terms and the inclusion of additional articles and parts. We do not think that either of these expressed purposes manifests an intention that the deletion of pulley blocks removes such articles from the ambit of item 680.50. In fact, we consider the removal of the phrase "pulley blocks" to be unexplained for it did not affect a clarification of the terms which adjoined it or that which replaced it nor obviously did it constitute an addition. Since the action of the Tariff Commission gives no clue as to its intention, we can draw no conclusions from the deletion and must instead rely on our interpretation of the existing statutory language.

We also emphasize that in matters of statutory interpretation by recourse to legislative history the discovery of deletions from a final draft does not necessarily mean that the act as finally constituted cannot have the same scope without the deleted portion. It may be that the deleted portion was excised because it was superfluous and not because it was the intent of the legislators to narrow the bounds of the legislation. See for example *Burlington Truck Lines, Inc.* v. *Iowa Employment Security Commission*, 32 N.W. 2d 792 (1948). See also *Andrews* v. *Hovey*, 124 U.S. 694, 716 (1888), for an extreme expression of the view that arguments based on the phases of the provisions of an act during passage are generally unsafe and unreliable.

In sum it is our view, based on lexicographic authority and the approach to legislative history set forth above that item 680.50 as finally constituted is more amenable to the inclusion of pulley blocks than the provisions claimed by plaintiff in the alternative. We therefore are of the opinion that plaintiff has failed to disprove the classification of the collector.

As regards plaintiff's claim that the importation is properly classifiable under the provision for pulley tackle in item 664.10, we draw attention to the fact that its scope must be determined in consonance with the scope of the provision for pulleys. The instant importation would under no circumstances be pulley tackle in its condition of importation since "tackle" consists of the entire assemblage of ropes and pulleys arranged for hoisting and pulling and the importation consisted of the pulley block alone. It might however be considered a *part* of pulley tackle were it not for the preference given to the specific provision for pulleys. This is in keeping with the rule of General Headnote 10 (ij) which provides that a specific provision for an article in

its own right will prevail over a provision which covers that article as a part of another entity. See *J. E. Bernard & Co., Inc.* v. *United States*, 59 Cust. Ct. 31, C.D. 3060 (1967) ; *Wilfred Schade & Co., Inc., a/c Glamorgan Pipe & Founding Co.* v. *United States*, 62 Cust. Ct. 138, C.D. 3701, 295 F. Supp. 1117 (1969).

We need deal only briefly with plaintiff's remaining claims, all of which are predicated on the importation being a machine or part of a machine. It suffices to say that the importation does not meet the criteria for machines which have been generally applied by this court under the Tariff Act of 1930 and which continue to have validity under the Tariff Schedules of the United States. See *Trans Atlantic Co.* v. *United States*, 54 CCPA 75, C.A.D. 909 (1967) ; *United States* v. *IDL Mfg. & Sales Corp.*, 48 CCPA 17, C.A.D. 756 (1960). The importation is a physically neutral conduit of force or energy. For an example of a "pulley" which was held to be a machine, see *Nord Light, Inc.* v. *United States*, 49 CCPA 12, C.A.D. 786 (1961). See also *Dorf International, Inc.* v. *United States*, 61 Cust. Ct. 87, C.D. 3532 (1968). No evidence has been presented to show that the importation is part of a machine nor would such a position appear tenable.

In conclusion, we find that the plaintiff has failed to disprove the classification of the collector and accordingly its protests are overruled.

Judgment will be entered accordingly.