(C.D. 3890)

ROBERT BOSCH CORP.
ARTHUR J. FRITZ & Co. } *v.* UNITED STATES

United States Customs Court, Second Division

(Decided October 1, 1969)

*Glad & Tuttle* (*George R. Tuttle* of counsel) for the plaintiffs.
*William D. Ruckelshaus*, Assistant Attorney General (*Owen J. Rader* and *Patrick D. Gill*, trial attorneys), for the defendant.

Before RAO, FORD, and NEWMAN, Judges

RAO, Chief Judge: The merchandise involved in this case, described on the invoice as condensers, was imported from West Germany and entered at the port of San Francisco. It was assessed with duty at 12.5 per centum ad valorem under item 685.80 of the Tariff Schedules of the United States, as electrical capacitors. Various claims are made in the protest, but the one presently relied upon is that the merchandise is properly dutiable at 8.5 per centum ad valorem under item 683.60, as ignition equipment for internal combustion engines.

The pertinent provisions of the tariff schedules are as follows:

Schedule 6, part 5:

| | | |
|---|---|---|
| 683.60 | Ignition magnetos, magneto-generators, ignition coils, starter motors, spark plugs, glow plugs, and other electrical starting and ignition equipment for internal combustion engines; generators and cut-outs for use in conjunction therewith; all the foregoing and parts thereof _____ | 8.5% ad val. |
| 685.80 | Electrical capacitors, fixed or variable_____ | 12.5% ad val. |

At the trial plaintiffs called Wilmer McFadgen, service manager of Robert Bosch Corporation of South San Francisco, importer and distributor of automotive, electrical, and radio equipment manufactured by the home plant at Stuttgart, Germany. His duties include supervising personnel who install and repair such automotive and electrical articles and conducting a business training school to teach the company's distributors about its automotive and electrical articles, such as tape recorders, starters, generators, and alternators. He has been with the company since its inception in the United States about 11 years ago, and was previously involved in a similar line of work. He has made repairs on the ignition systems of imported automobiles, such as the Volkswagen, Mercedes-Benz, Volvo, and Issetta. He has taken down and put back together various types of automobile engines.

The witness testified that the Robert Bosch Corporation in Germany manufactures equipment for certain makes of automobiles. It produces the starter, generator, coil, spark plugs, distributor, ignition switch, and windshield wiper for the Volkswagen and the mechanical fuel injection, alternator, regulator, starter, distributor, spark plugs, and radio material for the Mercedes-Benz.

The witness was familiar with cone condensers that are used in ignition systems and stated that condenser number 237 330 055, one of those involved herein, was used in Volkswagens. He had installed and used that particular condenser. A sample was received in evidence as exhibit 1. According to a textbook entitled Automotive Mechanics by William H. Crouse (illustrative exhibit B) with which the witness agreed, a condenser or capacitor is made up of two thin metallic plates separated by an insulator. The plates are strips of aluminum foil, insulated from each other by special condenser paper and wrapped on an arbor to form a winding. The witness said that exhibit 1 is wound in a steel case and is terminated on the end with a wire to reach the primary circuit of the distributor. It has a rounded clip on it to fit it to the housing of the distributor. He stated that it has no application other than in the ignition sysem of a Volkswagen automobile.

According to the witness, the components of an ignition system are a distributor in which there are condenser points, rotor, and cap; the wiring between the distributor and ignition coil; and the wiring between the ignition coil and the spark plugs. A diagram in a booklet issued by Robert Bosch of Stuttgart on Battery Ignition Equipment (illustrative exhibit 2) includes in the Bosch Battery Ignition the ignition switch, ignition coil, ignition distributor, spark plugs and connecting wiring. It appears from this and other illustrations that the condenser is attached to the distributor.

Mr. McFadgen stated that the basic purpose of the ignition system in an automobile is to supply a voltage sufficient to gap the bridge

across the spark plugs and fire the combustion mixture within the engine to start the engine and keep it running. In an automobile, voltage is built up by opening and closing the points of the distributor, and the condenser is utilized to take the arc away from that set of points. The witness explained that when electrons flow through a wire and the operation is stopped, they have to go some place and the condenser takes them and stores them momentarily.

A further explanation appears in the aforementioned textbook (illustrative exhibit B) as follows:

> 3. *Condenser effect.* As the contact points separate in the distributor, the flow of current from the battery through the primary winding of the coil is interrupted. Instantly, the magnetic field begins to collapse, and this collapse attempts to reestablish the flow of current. If it were not for the condenser (also called a *capacitor*), the flow of current would be reestablished. This means a heavy electric arc would take place across the separating contact points. The points would burn, and the energy stored in the ignition coil as magnetism would be consumed by the arc. The condenser prevents this, however, because it momentarily provides a place for the current to flow as the points begin to move apart.

Mr. McFadgen stated that a condenser and a capacitor are the same thing, the word "capacitor" being used in radio and the word "condenser" in the automotive field. He said that the condensers or capacitors used in radio are smaller than exhibit 1 and are manufactured differently; they have independent grounding.

The witness was shown page 31 of an Equipment and Spare Parts Manual from Bosch, Germany (illustrative exhibit A). He said that condensers were depicted thereon and that they were labeled on page 30 as *capacitors*. The term "condenser" is used in the Bosch Battery Ignition Equipment booklet (illustrative exhibit 2).

Defendant called Norman L. Tauber, a teacher of vocational auto mechanics at Polytechnic High School in San Francisco. He is a graduate of San Francisco State College, has taught auto mechanics for 13 years, and was previously himself an auto mechanic. He is familiar with Volkswagens and has repaired them. He said that exhibit 1 is a condenser and that a condenser is also known as a capacitor and in some cases is called a suppressor. He described the functions of a condenser in an automobile as follows:

> * * * one is to absorb electrons which would normally be flowing due to the inertia of the normal flow as the magnetic field trys [sic] to collapse. * * * the normal flow is for them, the electrons, to travel across the points as the points begin to open. The condenser absorbs a number of these electrons, a great deal of them, holding them momentarily, and as the points are fully opened, the condenser will discharge these electrons back into the coil.

The secondary function would be to provide a greater voltage in the coil than you normally have, about 250 volts, so the coil could have a greater capacity for the next go around as the points open again. This goes on over and over again continuously as the ignition systems function. This is the major function.

He said that exhibit 1 was designed with a definite amount of capacity and was matched to the coil in the ignition system of an automobile. He testified that a suppressor is a condenser attached to the generator armature terminal to reduce the amount of static on automobile radios. It would not be the same as exhibit 1 in terms of the number of electrons that it could absorb.

It is clear from the record presented that a condenser or capacitor of the type here involved is necessary to the proper operation of an automobile ignition system and that the condensers before the court are designed for the Bosch set of points and the Bosch coil and are used in the Volkswagen automobile. Plaintiffs do not claim that these condensers are not capacitors but contend that they are ignition equipment for internal combustion engines, are of the same kind as the other articles of ignition equipment enumerated in item 683.60, and are more specifically provided for under that item than under item 685.80, as capacitors.

Under the General Interpretative Rules for the Tariff Schedules of the United States, it is provided:

> 10. General Interpretative Rules. For the purpose of these schedules—
>
> \*          \*          \*          \*          \*          \*          \*
>
> (ij) a provision for "parts" of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part.

In accordance with this rule even if the condensers or capacitors here involved are *parts* of ignition equipment for internal combustion engines, they are nevertheless dutiable under the specific provision for capacitors in item 685.80. *J.E. Bernard & Co., Inc.* v. *United States*, 59 Cust. Ct. 31, C.D. 3060 (1967) ; *C.F. Liebert* v. *United States*, 60 Cust. Ct. 677, C.D. 3499, 287 F. Supp. 1008 (1968) ; *Wilfred Schade & Co., Inc., a/c Glamorgan Pipe & Foundry Co.* v. *United States*, 62 Cust. Ct. 138, C.D. 3701, 295 F. Supp. 1117 (1969).

Thus the issue presented is whether capacitors of the type here involved are *ignition equipment* within the meaning of item 683.60.

The term "equipment" is a broad one and has been defined to include the implements used in an operation or activity, a collection of such equipment, a piece of such equipment, everything needed for an efficient operation or service, the outfit needed or required for a special

service or purpose. Webster's Third New International Dictionary (1968) ; Funk & Wagnalls New Standard Dictionary (1956).

Plaintiffs have cited two cases in support of their claim that these condensers are ignition equipment, one involving ship's equipment and the other involving sports equipment. These cases are not very helpful since they do not concern ignition equipment nor a distinction between equipment and parts. In *H.E. Warner, Trustee, American Mail Line, Ltd.* v. *United States*, 28 CCPA 143, C.A.D. 136 (1940), plates, cups and saucers, designated as "crockery" and used for the convenience and comfort of the passengers and crew on board a vessel were held to be ship's equipment, and in *Cruger's (Inc.)* v. *United States*, 12 Ct. Cust. Appls. 516, T.D. 40730 (1925), polo caps and helmets were held not to be equipment used in conjunction with balls in exercise or play since they were not shown to be ordinarily used or needed and required for the proper, efficient playing of polo. In the recent case of *American Astral Corporation* v. *United States*, 62 Cust. Ct. 563, C.D. 3827, 300 F. Supp. 658 (1969), it was held that Congress had broadened the sports equipment provision and that gloves designed for use in connection with tennis were tennis equipment.

However, we are concerned here with provisions for ignition equipment and parts. The term "ignition equipment" refers to the implements or outfit needed to ignite the fuel mixture in an internal combustion engine. Congress has named some of them specifically : Ignition magnetos, magneto-generators, ignition coils, starter motors, spark plugs, and glow plugs. It has also provided for "other electrical starting and ignition equipment" and for "parts". Thus, while everything in an ignition system may be required for it to perform its functions, since Congress has made a distinction between ignition equipment and parts, it evidently did not intend that every piece or part in an ignition system should be considered ignition equipment *per se.*

The condensers or capacitors involved herein are designed to be and are attached to distributors. They are terminated on the end with wire to reach the primary circuit of the distributor. They prevent the current flowing from the ignition coil from forming a destructive arc into the distributor points by absorbing and holding electrons. They are not themselves independent components of the ignition system but service the coil and the distributor.

In a technical encyclopedia entitled "The Way Things Work", page 482, an ignition distributor is described as comprising the contact breaker with condenser, the ignition cam, the actual distributor, and an automatic timing control device. The Bosch brochure on Battery Ignition Equipment (illustrative exhibit 2) does not include the con-

denser as a separate component but lists the ignition coil, the contact breakers, and the ignition distributor.

In the course of the trial, Mr. McFadgen testified:

> Q. When you work with the condenser, are they completely sealed?—A. Yes, sure. It is a complete *part*. [Emphasis supplied.]

A capacitor is a device used in electrical circuits for the temporary storage of an electrical charge. Capacitors find many applications in electrical circuits and are used for various purposes in different branches of the electrical industry. (The Harper Encyclopedia of Science, vol. 1, pp. 203–204.) They may be used in ignition systems, radio apparatus, and electrical circuits. It appears from the Tariff Classification Study Submitting Report of November 15, 1960, that they are components of the kind Congress had in mind when enacting General Interpretative Rule 10(ij), *supra*. This Study, which was before Congress prior to the enactment of the Tariff Classification Act of 1962, states (p. 19):

> General headnote 10(ij) specifies that a provision for parts of an article covers a product solely or chiefly used as a part of such article but does not prevail over a specific provision for such part. At the present time, much uncertainty exists in connection with the tariff treatment of parts of articles. In some instances, a mere provision for "parts" prevails over much more specific descriptions in the tariff schedules. Even certain "universal" components such as nuts, bolts, screws, and so forth, are sometimes classified as parts of a particular article according to their type and specific uses. In the proposed schedules, specific provision is made for the more usual components of articles. Under the rule expressed in headnote 10(ij), these specific provisions will prevail over a mere provision for "parts" of a particular article.

Pursuant to this rule, it was held in *J.E. Bernard & Co., Inc.* v. *United States*, *supra*, that certain electrical components, used in the maufacture of audio-frequency amplifiers and classified as parts of projectors, were dutiable under various provisions of the tariff schedules, such as those covering electrical fuses, transformers, resistors, and electrical insulators. Capacitors are in the same category and are the type of article Congress intended to be classified under item 685.80 rather than under various provisions of the tariff schedules depending upon whether they are dedicated for use as parts of ignition equipment, radio apparatus, or other electrical articles.

We conclude that the condensers or capacitors here involved were properly classified under the provision for capacitors in item 685.80. Accordingly, the protest is overruled and judgment will be entered for the defendant.