CRUGER'S (INC.) *v.* UNITED STATES (No. 2417).[1]

1. PARAGRAPH 1402, TARIFF ACT OF 1922—"BALLS"—"OTHER EQUIPMENT."

Paragraph 1402, tariff act of 1922, provides for certain named balls, "and all other balls * * * designed for use in physical exercise or in any indoor or outdoor game or sport, and all clubs, rackets, bats, or other equipment, such as is ordinarily used in conjunction therewith in exercise or play, * * *." To hold that "other equipment" includes only such articles as are ordinarily used to hit or propel the ball would be to defeat to some extent the manifest legislative intent to admit at the 30 per cent rate of the paragraph all necessary articles ordinarily used with balls for physical exercise or for the playing of any indoor or outdoor game or sport.

2. POLO CAPS AND HELMETS.

Polo caps and helmets, not being shown to be ordinarily used and needed or required for the proper, efficient playing of polo or for the proper and efficient protection of the players against the hazards of the game, the judgment of the Board of United States General Appraisers overruling a protest against their classification as wearing apparel of cotton, under paragraph 919, tariff act of 1922, claiming classification as equipment for playing outdoor games, under paragraph 1402, is affirmed.

---

[1] T. D. 40730.

United States Court of Customs Appeals, March 6, 1925

APPEAL from Board of United States General Appraisers, G. A. 8780 (T. D. 40143)

[Affirmed.]

*Walden & Webster (Walter F. Welch* and *Edward F. Jordan* of counsel) for appellant.

*William W. Hoppin,* Assistant Attorney General (*Charles D. Lawrence* and *Oscar Igstaedter,* special attorneys, of counsel), for the United States.

[Oral argument Oct. 17, 1924, by Mr. Welch and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

SMITH, Judge, delivered the opinion of the court:

Polo caps and polo helmets imported at the port of New York and classified by the collector of customs as wearing apparel in chief value of cotton not specially provided for were assessed for duty at 35 per cent ad valorem under paragraph 919 of the tariff act of 1922, which reads as follows:

PAR. 919. Clothing and articles of wearing apparel of every description, manufactured wholly or in part, composed wholly or in chief value of cotton, and not specially provided for, 35 per centum ad valorem.

The importer protested that the merchandise was dutiable at 30 per cent ad valorem under paragraph 1402 of the act of 1922, which paragraph reads as follows:

PAR. 1402. Boxing gloves, baseballs, footballs, tennis balls, golf balls, and all other balls, of whatever material composed, finished or unfinished, designed for use in physical exercise or in any indoor or outdoor game or sport, and all clubs, rackets, bats, or other equipment, such as is ordinarily used in conjunction therewith in exercise or play, all the foregoing, not specially provided for, 30 per centum ad valorem; ice and roller skates, and parts thereof, 20 per centum ad valorem.

The protests in the case were submitted to the Board of General Appraisers on the following stipulation:

It is hereby stipulated and agreed by and between the Assistant Attorney General, attorney for the United States, and Walden & Webster, attorneys for the importers—

1. That the merchandise returned on the invoice at 35% ad valorem under paragraph 919 consists of polo caps and polo helmets such as are ordinarily worn by the player when engaged in playing the game of polo.

2. That the said game of polo is a form of exercise or play and is played with a mallet and a ball.

3. That the aforesaid is the chief use of said caps and helmets.

NEW YORK, *January 11, 1924.*

WALDEN & WEBSTER,
*Attorneys for Importers.*
WM. W. HOPPIN,
*Assistant Attorney General.*

The board overruled the protest and the importer appealed.

The decision of the board rested entirely on the proposition that the words "other equipment" in paragraph 1402 included only such articles as were ordinarily used in exercise or in play to hit or propel a ball. That construction we are of the opinion is altogether too narrow and to some extent defeats the manifest legislative intent of the provision, which was to admit at the 30 per cent rate all necessary articles ordinarily used with balls for physical exercise or for the playing of any indoor or outdoor game or sport.

Handball, basketball, volleyball, jai alai, and football, are just as much games played with a ball for exercise or sport as are baseball, tennis, or golf, and neither the paragraph nor the history of the legislation furnishes the slightest evidence that it was the purpose of Congress to discriminate in favor of certain classes of ball games and against others by limiting the equipment ordinarily used in such games to clubs, rackets, bats, mallets, and similar devices. Moreover, under the construction put upon the paragraph by the board, wickets for cricket, arches for croquet, baskets for basketball, nets for tennis and volleyball, baskets on the hand for jai alai, tenpins for bowling, and specially made gloves for handball, although essential and ordinarily used for the playing of the games for which such devices are designed, would be excluded from the designation "other equipment."

The particular part of paragraph 1402 involved in this case furnishes no excuse for invoking the overworked legal maxim ejusdem generis. In fact the application of that maxim would deny full effect to the language "other equipment such as is ordinarily used in conjunction therewith," and thereby bring about an amendment of the provision.—Overton & Co. v. United States (2 Ct. Cust. Appls. 422, 424; T. D. 32172); Graf Bro. v. United States (6 Ct. Cust. Appls. 190; T. D. 35440); United States v. Mescall (215 U. S. 26, 31).

The paragraph could have been very easily restricted in its scope by providing for clubs, bats, rackets, and *similar* equipment, but as the statute did not so provide, it is not within the province of the courts to exclude from the designation "other equipment" articles just as essential for playing games with balls and just as ordinarily used in conjunction with balls as clubs, bats, or rackets. To hold that "other equipment" covers only devices for hitting or propelling the ball would be nothing less than the making of a limitation which Congress did not see fit to prescribe and the exercise of a legislative, not a judicial, function.

The word "equipment" means things or supplies needed for a special purpose or service. (See "Equipment" and "Needed"—Standard Dictionary.) The term "equipment" includes the neces-

sary adjuncts of a service and imports the outfit needed or required to accomplish a special object or purpose.—Rubey v. Coal & Mining Co. (21 Mo. Appls. 159, 169); People v. St. Louis, Alton & Terre Haute Railroad Co. (176 Ill. 512, 522); National Bank v. G. C. &. S. F. Ry. Co. (95 Tex. 176, 183); Oppenheimer v. Greencastle School Tp. (164 Ind. 99, 103); United States Rubber Co. v. American Bond Co. (86 Wash. 180, 182). Articles which are not necessary or requisite for a special purpose or service and the use of which is dictated by fad, fancy, or fashion, can not therefore properly be called equipment.

We are consequently of the opinion that the term "equipment" as used in paragraph 1402 means inanimate objects ordinarily used and needed or required for the safe, proper, and efficient taking of physical exercise with balls, and inanimate objects ordinarily used and needed or required for the safe, proper, and efficient playing of any indoor or outdoor ball game or sport.

As the record does not disclose that the polo caps and polo helmets are ordinarily used and needed or required for the proper, efficient playing of polo, or for the proper and efficient protection of the players thereof against the hazards of the game, we must sustain the conclusion reached by the board, although we are not in accord with its decision as to the meaning of the phrase "other equipment."

The judgment of the Board of General Appraisers is *affirmed*.

BLAND, Judge, concurring: It is with some reluctance that I concur in the result of the decision in this case, which holds that under the stipulation it is not shown that the polo helmets are requisite either for the playing of the game of polo or for the protection of the polo player. The stipulation might be regarded as sufficiently broad, when considered with the sample before us, to bring the importation within the rule laid down. However, it may be contended that, while courts may take judicial notice of games, equipment, etc., they may not take notice of the use and purpose of the use of an article. I entertain some doubts on this question, and shall not oppose the settled convictions of my associates on this point.

If the ruling opinion attempts to lay down a rule for future guidance in connection with classification under paragraph 1402, it is not, in my opinion, sufficiently definite. I do not like the use of the word "necessary" unless its use be defined or limited. "Necessary" might convey the idea that the article was indispensable to the game or exercise. I do not think Congress meant to limit the equipment to those articles which are so essential or necessary to the game as to make it impossible to play the game without the article; nor do I think, on the other hand, that it meant to include a great many articles of surplus or incidental equipment which may be appropriate to use in the game or exercise, but which are not so dedicated to, or

designed for the use in the game or exercise, as to bring them within the meaning of the words "other equipment" as used in the paragraph.

If the proof had shown, in this case, that the thick cork padding and other items of construction of the helmet had been so made for the protection of the player, or that the helmet was ordinarily worn or used in the game or exercise so as to promote its efficiency or safety, then, in that instance, it should be regarded as "equipment" under paragraph 1402.

I have in mind two articles which illustrate my thought. Heavy padded football pants, under proof or stipulation, showing that they were ordinarily worn by the football player when engaged in the game of playing football and that this was their chief use, and that the construction and design of the pants were so designed as to dedicate them to this use, clearly should fall within paragraph 1402. As has been well said, in Judge Smith's opinion, if the use is dictated by fad, fashion, or fancy, then it should not be regarded as such "equipment" as Congress had in mind when using the term. Golf trousers are not so dedicated to the game of golf as to bring them within the paragraph, although golf may be their chief use. While golf experts may draw some fine distinctions between the effect of wearing different kinds of wearing apparel while playing the game of golf, it would seem to me that the difference between wearing a pair of golf trousers and a pair of tennis trousers while playing the game is not sufficient to justify the conclusion that golf trousers possess any unusual characteristics which dedicate them to the game in such a way as to distinguish them from other kinds of trousers that might appropriately be worn in the efficient playing of the game. Trousers are needed in the game of golf, but not necessarily golf trousers. Trousers are needed in the game of football, and, I think, football trousers are needed. Not only are they needed, but by virtue of their construction and use they are especially dedicated to the game. Yet, it can not be said that they are necessary to the game, if by "necessary" we mean indispensable.