**STONEWALL TRADING CO.**

v.

**UNITED STATES.**

**C.D. 4023; Protest 68/6780–99534.**

United States Customs Court, First Division.

May 15, 1970.

Stein & Shostak, Los Angeles, Cal. (Leonard Fertman, Los Angeles, of counsel), for plaintiff.

William D. Ruckelshaus, Asst. Atty. Gen. (Thomas Fernandes, Morris Braverman, New York City, and John A. Winters, Woonsocket, R. I., trial attorneys), for defendant.

Before WATSON, MALETZ, and RE, Judges.

RE, Judge:

This case involves the proper classification for duty purposes of certain vinyl gloves imported by plaintiff from Japan. They were classified by the district director at Los Angeles as other gloves of rubber or plastics under item 705.86 of the Tariff Schedules of the United States and were assessed with duty at the rate of 35 per centum ad valorem. Plaintiff protested the classification and claims that the merchandise consists of gloves, specially designed for use in skiing, and is therefore properly dutiable at only 15 per centum ad valorem under item 735.05 of the tariff schedules which provides for gloves "specially designed for use in sports". By a timely motion to amend the protest, plaintiff claims alternatively that the merchandise constitutes "ski equipment" which is dutiable at 18.5 per centum ad valorem under item 734.97 of the Tariff Schedules of the United States.

Item 705.86 of the Tariff Schedules of the United States, pursuant to which the merchandise was classified, provides as follows:

"Gloves of rubber or plastics:

 * * * * * * * *

 Other ................................35% ad val."

By virtue of headnote 1(a) of schedule 7, part 1, subpart C, which precedes and includes item 705.86, plaintiff maintains that the gloves at bar are excluded from classification under item 705.86.

Headnote 1(a) provides as follows:

"Subpart C.—Gloves

Subpart C headnotes:

 1. For the purposes of this subpart—

 (a) the term '*gloves*' includes all gloves and mittens designed for human wear, except boxing gloves, golf gloves, baseball gloves, and other gloves specially designed for use in sports; * * *."

Plaintiff claims that the merchandise is dutiable pursuant to item 735.05 under schedule 7, part 5, subpart D, which provides as follows:

"Subpart D.—Games and Sporting Goods

Subpart D headnotes:

 1. This subpart covers equipment designed for indoor or outdoor games, sports, gymnastics, or athletics, but does not cover—

 * * * * * * * *

 (v) other wearing apparel, other than specially designed protective articles such as, but not limited to, gloves, shoulder pads, leg guards, and chest protectors:

 * * * * * * * *

735.05 Boxing gloves, and other gloves, not provided for in the foregoing provisions of this subpart, specially designed for use in sports ..15% ad val."

The alternative item, under which plaintiff claims that the merchandise at bar is properly dutiable, provides as follows:

"Skis and ski equipment, snowshoes, sleds, and toboggans, all the foregoing and parts thereof:

 * * * * * * * *

734.97 Other ..........................18.5% ad val."

———◆———

The record in this case consists of the testimony of two witnesses, called on behalf of the plaintiff, and four exhibits introduced by the plaintiff.

About five years ago the plaintiff began in the importation of vinyl dress gloves which it sold to wholesalers, jobbers, retailers and general outlets

throughout the United States. Several of plaintiff's customers expressed the need for ski gloves indicating that "there is a tremendous amount of skiing done today in the United States", and that plaintiff "should complete a whole program by bringing in ski gloves."

Plaintiff's exhibit 1, representative of the "ski gloves" in issue, consists of a pair of black vinyl gloves imported by plaintiff. When asked how the importation of the merchandise represented by the exhibit "came about", Mr. Lewis Jackson, plaintiff's first witness, replied:

"When we were approached by our customers to bring in a ski glove, we went to a Beverly Hills store called Kerr's, which is a famous store for sporting goods, and we purchased a pair of ski mits; took this pair to Japan and told them that we want a pair of ski mits made with all the characteristics of the pair that we were leaving them with [sic]. They proceeded to copy this particular pair; and as a result, this is the ski mit that we decided to import."

The witness testified as to the following features of the gloves that served as a model, and that these features were also present in the imported gloves in issue: a) a hook and clasp that hold the gloves together, which are needed to hang them on the skier's parker when the gloves are removed; b) an extra piece of vinyl stitched along the thumb portion to meet the stress caused by the flexing of the knuckles when the skier grips the ski pole; c) an extra piece of red colored vinyl with padding reinforcement and inside stitching, which is securely stitched across the middle of the glove where the knuckles bend and cause stress; and d) cuffs with an elastic gauntlet to hold the glove firm around the wrist, so as to be waterproof, and to keep it securely on the hand.

The witness repeated that the gloves "are specifically designed for skiing, for the sport of skiing", and that they "were made and designed and sold for skiing."

He considered the gloves in issue to be "ski equipment". Additionally, the witness testified that the imported gloves are invoiced to his customers as "ski mits", and that they are sold to retailers who "in turn, sell them to skiers." Although the witness does not restrict his customers to selling the gloves to skiers, he follows the sale of the merchandise into the retail market, and, to his knowledge, they are sold only for skiing.

He also compared the gloves in issue with other gloves that were not "ski gloves" because they did not have certain features found on the imported merchandise.

Plaintiff's second witness, Mr. Waxman, in substance, corroborated the testimony of the first. He testified that, except for size, he had purchased and used gloves such as those in issue, and knew that they were water repellent. He had also observed his children and friends skiing wearing such gloves. He too pointed out the features of the gloves in issue, that unlike other gloves, made them "ski gloves".

■ In its brief, the defendant states that the portion of Mr. Jackson's testimony, to the effect that a pair of ski mits was purchased from a sporting goods store and was taken to Japan for the purpose of having them copied, "is in the nature of hearsay." Even assuming that the store carried a ski mit or glove, the defendant notes that the glove was not introduced into evidence "thus making cross examination by the Government impossible." Defendant adds that "[w]e are unable to determine if all of the characteristics were faithfully copied." Hence, defendant asserts that the testimony of the witness "cannot stand as proof that the imported gloves were specially designed for skiing * * *." The defendant, of course, admits that it "raised no objection to this testimony at the trial."

Since no timely objection was made at the trial, the objection is deemed to have been waived, and the admissibility of

the testimony may not properly be argued in the brief. Such testimony is part of the evidence in the case, and may be relied upon by plaintiff in support of its position that a pair of ski mits was purchased, and that the merchandise in issue contains the characteristics that were copied from the mits that were purchased. As stated by Professor McCormick in his Handbook of the Law of Evidence:

"A failure to make a sufficient objection to evidence which is incompetent waives as we have seen any ground of complaint of the admission of the evidence. But it has another effect, equally important. If the evidence is received without objection, it becomes part of the evidence in the case, and is usable as proof to the extent of whatever rational persuasive power it may have. The fact that it was inadmissible does not prevent its use as proof so far as it has probative value. * * * " McCormick, Handbook of the Law of Evidence 126–127 (1954).

That such evidence may properly be considered by the court see Diaz v. United States, 223 U.S. 442, 450, 32 S.Ct. 250, 56 L.Ed. 500 (1912). See also Richardson on Evidence, Ninth Edition by Prince, § 213 (1964).

The testimony of Mr. Jackson was that of a witness who was familiar with every phase of the design, manufacture, importation, sale and use of the controverted merchandise. His testimony was credible, clear and uncontradicted, and it has been held that the testimony of such a witness is of especially high probative value, and may be sufficient to discharge the plaintiff's burden of proof on the issue of chief use. Davis Products, Inc., et al. v. United States, 59 Cust.Ct. 226, 229–230, C.D. 3127 (1967), and cases cited therein.

At the outset, it must be noted that item 735.05 provides for "other gloves, *not provided for in the foregoing provisions of this subpart.*" [Emphasis added.] Defendant is therefore correct in its assertion in its brief that "[i]f the merchandise at bar is indeed ski gloves, then it would be *provided for* under item 734.97 as ski equipment." [Emphasis in original.] Citing the cases of Wico Corporation v. United States, 60 Cust.Ct. 324, C.D. 3376, 282 F.Supp. 798 (1968), and American Astral Corporation v. United States, 62 Cust.Ct. 563, C. D. 3827, 300 F.Supp. 658 (1969), defendant concludes that "[p]laintiff's only claim can be under item 734.97." Since the cases cited fully support this conclusion, the question presented is whether the merchandise at bar is properly classifiable as ski equipment.

It may therefore be stated that if the court finds that the gloves in issue were specially designed for use in skiing they come within the purview of item 734.97 as "ski equipment", and the protest must be sustained. The court, consequently, will proceed to determine whether the controverted merchandise is classifiable as contended by plaintiff in its alternate claim. Indeed, in its reply brief, written after the decision of this court in the *American Astral Corporation* case, plaintiff seems to have abandoned its initial claim for classification of the merchandise under item 735.05 as "other gloves, not provided for in the foregoing provisions of this subpart, specially designed for use in sport". Specifically, it asserts that "plaintiff's claim for classification of this merchandise as ski equipment under item 734.97 should be sustained".

In its reply brief, plaintiff submits that "notwithstanding defendant's strenuous attempts to distinguish the facts of the case at bar from those in the *American Astral* case, the principles, tariff history, and case law discussed and relied upon in that case are dispositive of the instant case and compel a holding that the vinyl ski gloves at bar are properly classifiable as ski equipment under item 734.97, as claimed by plaintiff."

In the *American Astral Corporation* case, gloves composed of a lambskin palm and a white terry-cloth back, packaged

and imported individually rather than in pairs, were classified under item 704.85 of the tariff schedules as gloves of man-made fibers, knit, at the rate of 25 cents per pound plus 32½ per centum ad valorem. Plaintiff therein claimed that the gloves should have been classified under item 734.88 as lawn-tennis equipment, other, at the rate of 8 per centum ad valorem. Plaintiff claimed alternatively for classification under item 735.05 as gloves specially designed for use in sports at the rate of 15 per centum ad valorem.

Judge Maletz, writing for the court in the *American Astral Corporation* case, noted that the Explanatory Notes published by the Tariff Commission, dealing with part 5, subpart D of schedule 7, "reveal that it was the intention of the Tariff Commission to expand the scope of the subpart and to include therein *all* equipment (other than luggage) specially designed for use in sports and games." 300 F.Supp. at 662. [Emphasis in original.]

Citing the case of Cruger's (Inc.) v. United States, 12 Ct.Cust.Appls. 516, 519, T.D. 40730 (1925), Judge Maletz indicated that under paragraph 1402 of the Tariff Act of 1922 covering sporting equipment, the term "equipment" had been construed to include only those articles that were *needed* or *required* for the safe, proper and efficient playing of the sport. Hence, in the *Cruger's (Inc.)* case, polo hats and polo helmets were held to have been properly classified as articles of wearing apparel. Since the United States Court of Customs Appeals held that the record therein did not show that the "polo caps and polo helmets are ordinarily used and needed or required for the proper, efficient playing of polo, or for the proper and efficient protection of the players thereof against the hazards of the game", it overruled the importer's claim that they should have been classified as sporting equipment.

Judge Bland, who concurred, "with some reluctance", in the *Cruger's (Inc.)* case expressed the view that he did "not like the use of the word 'necessary'" as limiting the scope of the tariff designation "equipment". In his concurring opinion, Judge Bland stated:

"I do not think Congress meant to limit the equipment to those articles which are so essential or necessary to the game as to make it impossible to play the game without the article; nor do I think, on the other hand, that it meant to include a great many articles of surplus or incidental equipment which may be appropriate to use in the game or exercise, but which are not so dedicated to, or designed for the use in the game or exercise, as to bring them within the meaning of the words 'other equipment' as used in the paragraph." *Id.* at 519–520.

In the *American Astral Corporation* case, Judge Maletz set forth the "distinguishing characteristics" of the imported tennis glove therein involved, and the golf glove that was the subject of the case of Slazengers, Inc. v. United States, 33 Cust.Ct. 338, Abstract 58323 (1954), decided under paragraph 1502 of the Tariff Act of 1930. Since, in the *Slazengers, Inc.* case, it was shown that the golf gloves were specially designed for, and exclusively used by people playing the game of golf, the court sustained the plaintiff's claim that the gloves were golf gloves and properly dutiable as golf "equipment" under paragraph 1502.

In the *American Astral Corporation* case, Judge Maletz observed that in the *Slazengers, Inc.* case the court held that "if an article served no other purpose but to *aid* in a safer and more efficient game, it came within the designation of 'equipment' as contemplated by paragraph 1502." 300 F.Supp. at 663. [Emphasis in original.] From the *Tariff Classification Study* previously referred to, Judge Maletz noted the "congressional intent to liberalize the sports equipment provision still further so as to include not only equipment which is necessary to play the game but also equipment specially designed for use in connection with the game." Ibid.

Since the court, in the *American Astral Corporation* case, found that the tennis gloves therein had been specially designed for use in the game of tennis, it held that the gloves were tennis equipment under item 734.88 of the tariff schedules, and sustained the protest. Most pertinent to the case at bar is the statement that "the statutory designation of 'equipment' is satisfied once it is shown that the article is specially designed for use in the game or sport." 300 F.Supp. at 664.

In the *American Astral Corporation* case, since the court found that the gloves therein had been specially designed for the game of tennis, they were held to be tennis equipment notwithstanding the testimony of a tennis professional called by the defendant that they were not needed for the safe, proper and efficient playing of the game of tennis. In the case at bar, as noted previously, the testimony of plaintiff's witness stands uncontradicted as to the design and use of the "ski gloves" herein in issue.

In view of the foregoing, the specific question presented is whether the record herein shows that the gloves in issue were specifically designed for skiing. An examination of the record herein reveals that it fully supports plaintiff's alternate contention that the gloves in issue are ski gloves that constitute ski equipment under item 734.97 of the tariff schedules.

 The uncontradicted testimony of Mr. Jackson with respect to design, and that of Mr. Waxman pertaining to use, clearly establishes that the gloves in question were specially designed for use in the sport of skiing and that they are, in fact, so used. The exhibits, furthermore, confirm the testimony of plaintiff's witnesses that the gloves are ski gloves since they possess or incorporate features or characteristics, not present in ordinary gloves. These features make them particularly suitable for use in the sport of skiing as an aid and protective equipment for the skier.

It may very well be that the gloves possess fewer unique features and less originality in design than the lawn tennis gloves in the *American Astral Corporation* case, or the golf gloves in the *Slazengers, Inc.* case. This, however, is not fatal to plaintiff's claim for the court perceives no statutory or other requirement that the gloves are to be of original design. In the words of Judge Maletz in the *American Astral Corporation* case, the statutory designation of "equipment" is "satisfied once it is shown that the article is specially designed for use in the game or sport." On the question of special design, notwithstanding defendant's efforts to minimize the importance of the special features of the gloves, plaintiff's case is unassailable. On the basis of the record in this case, the court cannot agree with defendant's assertion that "such features are not special designs for any particular sport."

Even if the court were to disregard the testimony that the gloves are copies of ski gloves purchased from a sporting goods store, the record is replete with testimony of the special features that distinguish the gloves at bar from ordinary gloves. Because of all of the special features or characteristics described by the witnesses, they are invoiced and are sold as "ski mits" or "ski gloves".

 The fact that the gloves may be used on occasions other than when skiing does not warrant a different result. It is well to remember that the fact that an article is "specially constructed for a particular purpose merely means that it includes particular features which adapt it for that purpose." This point has been stated well in Plus Computing Machines, Inc. v. United States, 44 CCPA 160, C.A.D. 655 (1957), wherein Judge O'Connell added:

The purpose in question need not be the sole one served by the article and may not even be the principal one. Thus snow-tread tires are specially constructed for driving in snow even though, in practice, they may seldom

be used for that purpose; and armored trucks are specially constructed to give protection against bullets, even though they may never be fired upon." 44 CCPA at 167.

In response to plaintiff's testimony that the gloves have reinforcement around the thumb and elsewhere, defendant submits that "a more durable and more expensive glove is not one specially designed for use in any particular sport." The testimony did not relate to durability, but rather to special design, or special features, to make the gloves suitable for the particular sport. An examination of the exhibit will show that there is attached to the imported gloves a cardboard tab or label with the words "SPORT STYLED Rayon BOA-LINED SKI-MITTS Fits 6–8 years", and prominently states the price, "SPECIAL $1.29". From the standpoint of quality or cost, the gloves cannot be said to be of the "more expensive" variety. This, however, is also unimportant once the court has determined that they have been "specially designed for use in the game or sport." American Astral Corporation v. United States, 300 F.Supp. at 664. See also New York Merchandise Co., Inc. v. United States, 62 Cust.Ct. 38, C.D. 3671, 294 F.Supp. 971 (1969), where imported vinyl baseball gloves found to be a "junior edition" of professional baseball gloves were held properly dutiable as "baseball equipment" under item 734.55 of the tariff schedules.

In view of all of the foregoing the court finds that the record herein reveals that the imported vinyl gloves were specially designed for use in skiing. They are consequently properly classifiable as "ski equipment" under item 734.-97 and are properly dutiable at the rate of 18.5 per centum ad valorem.

The protest is consequently sustained and judgment will issue accordingly.