(C.D. 4124)

BORDER BROKERAGE COMPANY, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided November 12, 1970)

*Glad & Tuttle* (*George R. Tuttle* of counsel) for the plaintiff.
*William D. Ruckelshaus*, Assistant Attorney General (*Harold L. Grossman* and *Andrew P. Vance*, trial attorneys), for the defendant.

Before RICHARDSON, LANDIS, and ROSENSTEIN, Judges

RICHARDSON, Judge: The merchandise of this protest consists of retort crates and aluminum trays which were imported at Blaine, Washington, from Canada. The crates were classified in liquidation under item 692.60 of the Tariff Schedules of the United States at the duty rate of 16 per centum ad valorem. The trays were classified in liquidation under item 657.40 of the tariff schedules at the duty rate of 19 per centum ad valorem.

In its protest plaintiff claims that the crates and trays should be classified (1) under item 640.30 of the tariff schedules at 10 per centum ad valorem, and (2) under item 661.70 of the tariff schedules at 12½ per centum ad valorem. At the trial plaintiff sought to amend the protest to include the additional claim that the trays were dutiable as an entirety with the crates under the provision under which the crates were classified separately, namely, item 692.60 of the tariff schedules. The proposed amendment was granted by the trial court on condition that plaintiff file a written motion therefor with the court. And in its brief plaintiff endeavors to add still another claim to the protest, namely, that the trays are parts of vehicles provided for in item 692.60 of the tariff schedules.

Claims in a protest proceeding before the Customs Court are, of course, limited to those which are framed in the protest as originally filed or as properly amended. In this protest proceeding the record shows that plaintiff failed to file a written motion to amend the protest as directed by the trial court. Consequently, the proposed amendment which plaintiff sought to add to the protest in open court is not before the court by reason of non-compliance with the direction of the trial court to submit the motion in writing (R.4). See Memorandum to Accompany Order dated March 24, 1969 in *Mira-Flex Watch Corporation* v. *United States*, protest 63/22271, etc. And neither is the claim for parts of vehicles under item 692.60 of the tariff schedules (trays) as set forth on page 19 of plaintiff's brief before the court. No attempt was even made by plaintiff to amend its protest

to add this claim. Hence, it follows from the foregoing that the only claims presently before the court are those set forth in the protest.

The competing tariff provisions read as follows:

Classified:

(Retort crates)

Schedule 6, Part 6, Subpart B:

| | | |
|---|---|---|
| 692.60 | Vehicles (including trailers) not self propelled, not specially provided for, and parts thereof_____ | 16% ad val. |

(Trays)

Schedule 6, Part 3, Subpart G:

| | | |
|---|---|---|
| 657.40 | Articles of aluminum, not coated or plated with precious metal_____ | 19% ad val. |

Claimed:

(Retort crates and trays)

Schedule 6, Part 3, Subpart A:

Drums, flasks, casks, cans, boxes, lift vans, and other containers (except pressure containers in items 640.05 and 640.10 and collapsible tubes in item 640.40), all the foregoing, of base metal, chiefly used in the packing, transporting, or marketing of goods:

\* \* \* \* \* \* \*

| | | |
|---|---|---|
| 640.30 | Other _____ | 10% ad val. |

(Retort crates and trays)

Schedule 6, Part 4, Subpart A:

Industrial machinery, plant and similar laboratory equipment whether or not electrically heated, for the treatment of change of temperature, such as heating, cooking, roasting, distilling, rectifying, sterilizing, pasteurizing, steaming, drying, evaporating, vaporizing, condensing, or cooling; instantaneous or storage water heaters, non-electrical; all the foregoing (except agricultural implements, sugar machinery, and machinery or equipment for the heat-treatment of textile yarns, fabrics, or made-up textile articles) and parts thereof:

\* \* \* \* \* \* \*

| | | |
|---|---|---|
| 661.70 | Other _____ | 12.5% ad val. |

In evidence as illustrative exhibit 1 is a picture of a retort crate of the type used at the San Juan Island Cannery. And illustrative exhibit 2 in evidence is a picture of a retort like that which is located at the plant in the San Juan Island Cannery. Illustrative exhibit 1 is not presently before the court. This exhibit was transmitted along with the other exhibit in the case together with the official papers and trial record to the West Coast at the request of plaintiff's counsel to assist them in the preparation of their brief. Though requested, the illustrative exhibit 1 was never returned to the court. However, the court is able to proceed with the disposition of the case, notwithstanding the absence of this document, there being sufficient evidence in the record of a description of a retort crate.

Only one witness testified at the trial, and the testimony elicited from this witness does not appear to be in dispute. W. Gordon Hermenson, superintendent of the San Juan Island Cannery, testified that he had been engaged in the canning industry for 21 years, and has had opportunity to work with the retort crates and trays in issue (R.5–6). Mr. Hermenson testified that the retort crates as depicted in illustrative exhibit 1 are crates about 38 inches by 38 inches with two swivel and two stationary wheels (R.11–12), that the swivel wheels are used to guide the crate (R.12), that the crates are loaded with canned peas, or canned peas and carrots, and are then pushed into retorts which he indicated to be a large pressure cooker into which a large quantity of uncanned vegetables are placed for cooking (R.10).

The witness explained the interrelation between the retort crates and the retorts in the following manner: The retort crates are loaded with uncanned vegetables by a hydraulic hoist, then the retort crates are pushed into the retort where the vegetables are cooked by steam for 25 minutes and then cooled for 10 minutes, and then, upon completion of this process, the doors of the retort are opened and the crates are conveyed over to the unloading operation (R.11). Mr. Hermenson also stated that he had never observed the retort being used alone to cook vegetables without the retort crate (R.13). And he had never observed retort crates being used in any other manner than as described by him (R.14).

On cross-examination Mr. Hermenson testified that the retort crate can be referred to as a moving support or container for the conveyance of bulky objects (R.17), and that the retort crate is merely used to convey the materials that are to be treated in the retort (R.20). And he also stated that the trays are used exclusively with the retort crates (R.17–18), but admitted that trays similar to those in issue can be used to carry articles without the use of the crate (R.19), and that he had seen trays similar to those in issue being used in warehouses for the separation of cans (R.21).

It was also brought out in the evidence that the aluminum trays are thin and flexible, have no sides, are shaped to fit inside of the retort crates, are perforated by a number of two-inch holes, and are used to separate layers of cans loaded into the crates, and permit the free flow and circulation of steam through and around the cans when the crate is inside the retort.

With respect to item 661.70 plaintiff argues that the retort crates and trays (as entireties) are industrial machinery or plant equipment under this tariff provision because they are "appurtenances necessary to the working of the retort" when considered as industrial machinery, citing *Hudson Shipping Co. Inc., Barre Footwear Co.* v. *United States*, 47 Cust. Ct. 49, C.D. 2279 (1961), and, when considered as plant equipment, are "necessary adjuncts for the cooking of the vegetables in the cans in the retorts", citing *Cruger's (Inc.)* v. *United States*, 12 Ct. Cust. Appls. 516, T.D. 40730 (1925). Defendant contends that the retort crates and trays are not industrial machinery or plant equipment within the meaning of item 661.70, as they do not treat materials by means of a change in temperature.

Both parties call attention to the Tariff Classification Study dealing with this item 661.70, wherein it is stated (Schedule 6, page 263):

> . . . Item 661.70 covers industrial and laboratory equipment, whether or not electrically heated, for the treatment of materials by a process involving a change in temperature. This equipment is designed to submit materials to a heating or cooling process in order to cause the simple change of temperature, or to cause the transformation of materials resulting principally from the temperature change. The item does not cover equipment in which the heating or cooling, even if essential, is merely a secondary function designed to facilitate the main function. This equipment is presently dutiable in paragraphs 353, 360, 372, and 397 at various rates. The proposed rate (15 percent ad valorem) is an estimated average rate.

We agree with defendant's contention that the involved merchandise does not constitute industrial machinery within the meaning of item 661.70. Even if the crates and trays could be regarded as coming within the scope of the term "machinery" (a proposition we seriously doubt) it is clear from the evidence that the involved merchandise does not treat materials by a process involving a change in temperature. As defendant contends, and as the evidence shows, the involved crates and trays merely convey and hold canned vegetables which are subjected to the cooking process of the retort. As such, these articles are at least one step removed from being the kind of machinery, if indeed they are machinery, contemplated by this tariff provision for industrial ma-

chinery. In our opinion, the retort itself would sooner qualify for classification here than would the crates and trays at bar.

Also, it is to be noted that the case of *Hudson Shipping Co. Inc., Barre Footwear Co.* v. *United States, supra,* involving conveyor systems installed in a shoe factory and cited to us by plaintiff for the proposition that the term "machinery" includes appurtenances necessary to the working of a machine, was reversed on the law by our appeals court in *United States* v. *Hudson Shipping Co., Inc., Barre Footwear Co.,* 49 CCPA 92, C.A.D. 802 (1962).

As for the involved merchandise being plant equipment within the meaning of item 661.70, we do not read this tariff provision as covering plant equipment *per se,* of a specified type, as does plaintiff. We read the language in item 661.70, to wit, "plant, and similar laboratory equipment" to mean plant laboratory equipment and similar laboratory equipment, i.e., laboratory equipment similar to plant laboratory equipment. Not only do the words of item 661.70 convey this meaning to us, but the Tariff Classification Study notes do also, employing as they do the word "equipment" to embrace the words "machinery" and "equipment" where these words are used in the several tariff act paragraphs under study.

There is no showing in the instant record that the retort crates and trays at bar are in any sense or context "plant laboratory equipment" of the type specified in item 661.70. Consequently, we cannot find here any basis upon which to sustain plaintiff's argument for classification of the involved merchandise under item 661.70.

With respect to plaintiff's claim for classification of the involved merchandise under item 640.30, it is noted that plaintiff does not advance any supporting argument therefor in its brief. At the trial counsel for the plaintiff indicated that insofar as item 640.30 was concerned, plaintiff's claim is that the items at bar come within the language of "other containers . . . of base metal, chiefly used in the packing, transporting, or marketing of goods". The evidence adduced at the trial indicates that while the retort crates and trays hold and support the canned vegetables, that the retort crates also perform the function of conveying the canned vegetables to and from the retort. And the language employed in item 640.30, to wit, "used in the . . . transporting . . . of goods" refers, in our opinion, to containers which are auxiliary to the means of conveyance, and not to containers (such as the retort crates at bar) which are the means of conveyance. Therefore, on the basis of the evidence we cannot find any basis for classification of the instant merchandise under item 640.30.

Plaintiff advances other arguments in its brief in support of classifications different from that found by the collector. We do not consider

them here, either because they go beyond the limited scope of the protest claims originally made herein, or because our ruling on the primary claim makes unnecessary a consideration of a contention subsidiary to it.

On the instant record, we conclude that plaintiff has failed to rebut the presumption of correctness attaching to the classifications made herein with respect to the retort crates and trays. As such, the protest herein must be overruled.

Judgment will be entered accordingly.