(C.D. 4125)

SPORTS INDUSTRIES, INC. *v.* UNITED STATES

## United States Customs Court, First Division

(Decided November 13, 1970)

*Glad & Tuttle* (*Robert Glenn White* of counsel) for the plaintiff.
*William D. Ruckelshaus*, Assistant Attorney General (*Mollie Strum* and *Frederick L. Ikenson*, trial attorneys), for the defendant.

Before WATSON, MALETZ, and RE, Judges

RE, Judge: The issue presented for adjudication in this case pertains to the proper classification, for customs duty purposes, of certain gloves imported from England and described on the invoices as "divers gloves," They were classified by the customs officials under item 705.86 of the Tariff Schedules of the United States as "other" gloves of rubber or plastics, and duty was imposed at the rate of 35 per centum ad valorem.

Plaintiff claims that the gloves are specially designed for use in a sport, namely, underwater swimming, popularly known as skin diving or scuba diving. Consequently, plaintiff asserts that the gloves are precluded from classification under item 705.86 of the tariff schedules, and that they are properly classifiable under item 735.05 of the tariff schedules as "gloves * * * specially designed for use in sports" with duty at the rate of 15 per centum ad valorem.

The pertinent statutory provisions may be set forth as follows:

### Classified under

Subpart C, part 1, schedule 7 :

"Subpart C headnotes :

    1. For the purposes of this subpart—
    (a) the term 'gloves' includes all gloves and mittens designed for human wear, except boxing gloves, golf gloves, baseball gloves, and other gloves specially designed for use in sports; * * *"

"Gloves of rubber or plastics :

   *     *     *     *     *     *     *

705.86     Other _____ 35% ad val."

<u>Claimed under</u>

Subpart D, part 5, schedule 7:

"<u>Subpart D headnotes</u>:

> 1. This subpart covers equipment designed for indoor or outdoor games, sports, gymnastics, or athletics, but does not cover—
>
> \*     \*     \*     \*     \*     \*     \*
>
> > (v) other wearing apparel, other than specially designed protective articles such as, but not limited to, gloves, \* \* \*"

"735.05   Boxing gloves, and other gloves, not provided for in the foregoing provisions of this subpart, specially designed for use in sports _____ 15% ad val."

The record in the case reflects that the gloves in issue are made of unicellular neoprene, a non-porous rubber material. They are worn for the purpose of keeping a swimmer's hands warm by preventing an in and out flow of water on the hands. They are used primarily, if not exclusively, in the non-commercial, sports activity of underwater swimming, and are not suitable for any other practical use.

Defendant offered no evidence at the trial. Plaintiff's only witness was Mr. James S. Christiansen, an expert in skin diving. In addition to being the winner of the first National Spear Fishing Competition in 1950, Mr. Christiansen has won the sports award of the Underwater Society of America, and in 1962 was elected to the Spear Fishing Hall of Fame. The evidence of the physical character and construction of the gloves, as well as the testimony, indicates clearly that the gloves were designed for use in the sport of skin diving or scuba diving to protect the hands and to keep them warm much as an extension of the wet suit for the body. Mr. Christiansen explained the nature and purpose of a "wet suit" as follows:

> "A wet suit is normally, we say a unicellular neoprene, which means individual bubbles, and it forms an insulation, and it is made on the principle of non-exchange of water, so fit is of primary importance. This is put on. It could be likened to a fatty layer of skin, which some people have, but some don't, but most creatures do to insulate against the cold of the water. Prior to the use of the wet suit, diving wasn't nearly as widespread as a sport. Now it goes from Maine to Seattle, and from Texas up to the border of Canada."

After the trial, and the submission of plaintiff's brief, defendant was relieved from filing a brief. In its request, the defendant stated that the "request was being made in view of the record made herein and the plaintiff's claim that the imported merchandise is dutiable under item 735.05 of the Tariff Schedules of the United States, as other gloves specially designed for use in sports, which claim, we agree, is correct."

It is well established that whether an article is "specially designed" or "specially constructed" for a particular purpose may be determined by an examination of the article itself, its capabilities, as well as its actual use or uses. *United States* v. *Air-Sea Forwarders, Wholesale Business Machines et al.*, 54 CCPA 67, C.A.D. 907 (1967) ; *Marshall Field & Co.* v. *United States*, 20 CCPA 225, T.D. 46037 (1932) ; *Lionel Trading Co.* v. *United States*, 15 Ct. Cust. Appls. 365, T.D. 42562 (1928). There can be no doubt that, on the record presented, the court must find that the divers gloves in issue were specially designed for use in underwater swimming, popularly known as skin diving or scuba diving.

Certain recent cases have specifically dealt with gloves and whether they had been "specially designed" for a particular sport or purpose. *Stonewall Trading Co.* v. *United States*, 64 Cust. Ct. 482, C.D. 4023, 313 F. Supp. 410 (1970) ; *American Astral Corporation* v. *United States*, 62 Cust. Ct. 563, C.D. 3827, 300 F. Supp. 658 (1969).

The *American Astral Corporation* case dealt with tennis gloves "specially designed" for the sport of lawn tennis. Judge Maletz, writing for the court, quoted from the *Tariff Classification Study* and noted the "congressional intent to liberalize the sports equipment provision still further so as to include not only equipment which is necessary to play the game but also equipment specially designed for use in connection with the game." 62 Cust. Ct. at 569. Since the court found that the tennis gloves had been "specially designed" for use in the game of tennis, it held that they were "tennis equipment" under the appropriate item of the tariff schedules, and sustained the protest.

In the *Stonewall Trading Co.* case, plaintiff alternatively claimed that certain vinyl ski gloves were specially designed for use in skiing, and therefore were properly dutiable as "ski equipment" under the pertinent provision of the tariff schedules. As in the *American Astral Corporation* case the court noted the special features of the gloves that indicated that they had been "specially designed" for use in the particular game or sport. The court quoted from the *American Astral Corporation* case that the statutory designation of "equipment" is "satisfied once it is shown that the article is specially designed for use in the game or sport." 64 Cust. Ct. at 489.

In the case at bar the divers gloves in issue possess special features which clearly indicate that they were "specially designed" for use in the sport of underwater swimming. If the tariff schedules were to contain a pertinent provision for underwater swimming equipment, it would seem clear that, under the applicable authorities, the gloves in issue would qualify as "equipment". There is, however, no specific provision which covers underwater swimming "equipment". Nevertheless, there would seem to be no question that underwater swimming, pursued solely for personal pleasure, and not commercially or for compensation, is a "sport". Under the circumstances, therefore, the gloves are classifiable under item 735.05 of the tariff schedules which covers "gloves * * * specially designed for use in sports".

Since the gloves at bar are "specially designed for use in sports", they are excluded from classification under item 705.86 of the Tariff Schedules of the United States. Consequently, as claimed by plaintiff, they are to be classified under item 735.05 of the tariff schedules and are, therefore, dutiable at the rate of 15 per centum ad valorem as provided for therein.

Having determined that the merchandise was legally properly classifiable and dutiable under item 735.05 of the Tariff Schedules of the United States, the presumption of correctness that attaches to the classification of the customs officials has been overcome.

The protests are therefore sustained. Judgment will issue accordingly.